The Honorable, the United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is Puerto Rico Farm Credit, ACA v. Eco-Parque del Tanama Corporation et al., Appeal Number 19-1367. Attorney Lopez-Ortiz, please introduce yourself for the record and proceed with your argument. Good morning, Judge Lynch. Good morning, Judge Cayetano. Good morning, Judge LaPlante. Two years without seeing you. I am Vamily Lopez-Ortiz. I am the attorney for appellants in this case, Eco-Parque del Tanama, Ivan Ortiz Ruiz and Ana Maria Serrano Baez. I'm going to ask Judge Lynch for two minutes for rebuttal, please. No, this case doesn't require it. If you're caught by surprise, I'll give you a minute. Okay, thank you. So this is a case in which summary judgment should not have been granted. This is a procedural case in which the District Court granted summary judgment for plaintiffs who had the burden of proof and was the movement of the motion for summary judgment, even though there was conflicting documentary evidence. On record, by the evidence presented by Plaintiff Appellee itself. My clients are coffee farmers in Puerto Rico, in the mountains of Puerto Rico, in Utuado. They received a loan from the Puerto Rico Farm Credit, which is not a commercial bank. It is an agricultural cooperative governed by federal laws and federal regulations. There was some situations in which my clients fell in arrears in the payment of the loan and the Puerto Rico Farm Credit moved for foreclosure of the loan. But this does not happen now in this case. It originally happened in 2011 in an original case that was assigned to Judge Dominguez and was eventually dismissed by Judge Dominguez because the Puerto Rico Farm Credit failed to comply with the requirements of the Farm Credit Act, but specifically the notice requirements. That this case, the one we're seeing now is the second attempt by the bank to foreclose and collect the monies of the loan by my client. So what happens? The Farm Credit Act requires that in this particular situation, when a lender seeks to foreclose a loan, they must compute what is called a cost of foreclosure and a cost of restructuring. Why? Because the entire purpose of the Farm Credit Act is to protect the farmers and give them the alternative to be able to get back on their feet and get their farm producing and their loan. So the bank has to compute the cost of foreclosure and has to compute the cost of restructuring. And in the cost of foreclosure, the bank has to take into consideration the attorney's fees and the legal costs incurred in the foreclosure proceedings. And this is specifically sections 2202A-C, 2202A-E of the Farm Credit Act. And specific discussion on this issue is at page 28 on Appellant's Opening Brief. Counsel, before you get to that argument about the cost of foreclosure, which actually wasn't made to the district court, but putting that aside, first, your clients have to submit a restructuring plan. And on the restructuring plan, as I understood it, they asserted that they had a regular monthly income. And the bank said, no, you haven't documented that you have any such monthly income. And as a result, your notion that you can restructure goes nowhere, because in the absence of income, there's no hope for restructuring. So, as I understand it, to this day, your client does not claim that they had income. They never documented they had income during this time period. So could you please respond to that? Yes, I will, Your Honor. My clients, the way I understand the decision was made by the bank was that they did not have sufficient income to pay as per the proposed restructuring. But the Farm Credit Act allows for the restructuring to include the condonation of principal and interest. So if the amount of the loan, the principal and interest, gets reduced, then my client's  And I'm sorry, but if they don't have any income, or they haven't established a level of income that they have, how does that argument get you anywhere? Because then the bank had to propose a restructuring plan that could be consideration. No, first, you have to meet the requirements of proposing a viable or a plausible restructuring plan, and the bank said you simply didn't do that. Your Honor, the requirement says that you present a restructuring plan. But the Farm Credit Act puts the obligation on the bank to see if what I'm proposing is not viable, and my cost of foreclosure is higher than the cost of restructuring. If there is no income, how can there possibly be a restructuring? But Your Honor, what was presented to the bank was not that they did not have income. It's just that they did not have sufficient income regarding the principal and the interest that was being considered at that time of the loan. What did your client submit as to the amount of their income? I do not recall, Your Honor. I know. Well, it's a rather crucial part of the case. Well, I do not recall, Your Honor. Whatever is there, I believe those documents are the ones that are included in the supplemental appendix which was filed under seal. Four minutes remaining. Four minutes. And I would like to address what the comment Judge Lynch made, that we did not make the argument of the cost of foreclosure to the district court. Yes, Your Honor, we did. We did originally responding to the motion for summary judgment when, I mean, there were various phases in this case. The original motion for summary judgment was filed. We opposed. And it was the same argument. And the district court said that the bank had, at that point, not provided sufficient documentation, but it would allow the bank to do so. The bank then submitted the documentation. There was a move for reconsideration, and at that point, no objection was filed by you or your clients. Based on that documentation, which apparently showed that no restructuring plan was viable for lack of income, the district court entered a summary judgment. So it's quite clear, I think, that no opposition was filed to the motion for reconsideration. Your Honor, we addressed this specific issue in our reply brief, for which we asked leave, and we filed. We did file an opposition. It was not filed within the timeframe, but in Puerto Rico, we were leaving Maria hours without electric power until February 15, 2018. And these motions by the bank were filed towards the end of 2017. We did file an opposition. It was beyond the 14 days. We did file it. And the most important thing is that when the district court issued the order, the district court indicated clearly that they considered our opposition, because there is a specific reference to considering our opposition. And this is specifically addressed in the reply brief that we filed. And in that opposition, did you raise the argument you are now raising to the Court of Appeals? Of the cost of foreclosure? Yes, that's the argument that we raised, that there were various amounts of attorney's fees that were claimed by plaintiffs to have been incurred in the process of foreclosure. However, hundreds of thousands of dollars, however, they chose $2,700 in the amount to pay. As I understand it, when your clients signed the mortgage paper, they agreed that the cost of foreclosures was not the sums you are now claiming, but the sum which the bank provided to the district court. Let me explain that, Your Honor. First, is that true? And second, that's what the document says. It is true. The promissory note states that the maximum amount that the bank can receive in attorney's fees is 10% of the original loan, which is $29,200. That is true. But what the law requires, what the Farm Credit Act requires, is to consider all attorney's fees and legal costs. It does not say the attorney's fees that you're entitled to, but the legal costs you have incurred. And if you go to the verified complaint file by the bank, they say that they have incurred in hundreds of thousands of dollars in legal fees and costs. Your Honor, let me ask you about that, because I didn't read the statute the same way. It said it's supposed to, you have a decision, do you foreclose or do you restructure? And it requires you to do the rational thing, which is the one that costs the less. And so, you have to make an estimate of the legal fees, because you're making the decision before you commence the foreclosure action. So it doesn't say fees incurred, it says make an estimate of the legal fees, standing on what looks like February 8, 2016, they made an estimate that to go forward and foreclose would cost $2,760. And I don't see in the file any objection to the accuracy of that estimate of what proceeding forward with the foreclosure would disclose. Rather, I see an argument by your side that they should also have added in all fees they incurred in the prior unsuccessful litigation regarding the prior effort to foreclose. Well, why would they include that in? Because that's a sunk cost that is incurred whether they foreclose or don't foreclose. To address the last part of your question, Your Honor, they have to include it because the law says that it's legal actions and costs. It refers to plural, and it makes reference specifically in those specific sections. But our argument to the District Court did not rest exclusively in the fees incurred by the bank in the first foreclosure procedure. It made specific reference to what the bank was asking the District Court to grant. And if you go to the very- Thank you, counsel. Thank you. Thank you, Attorney Lopez-Otiz. If you would please mute your audio and your video. And at this time, would Attorney Muniz-Luciano please unmute his audio and video and introduce himself on the record to begin. Good morning, Your Honors. Mauricio Muniz-Luciano on behalf of Puerto Rico Farm Credit, the APELI in this case. Your Honor, as you can imagine, we have two main reasons for why summary judgment of the APELI should be confirmed. One, as Judge Lynch pointed, it's on a procedural argument. The other one's on the merits. Procedurally, as the record shows, Puerto Rico Farm Credit filed that motion for reconsideration at Docket 41 in which it submitted all the evidence regarding its compliance with the Farm Credit Act when it evaluated and denied APELI's request for proposal. That motion prompted a court ruling granting our motion for reconsideration, which was unopposed at the time. To be quite specific, we filed that motion on November 14, 2017. We filed a motion requesting that the same be granted as unopposed on December 11, 2017. That's Docket 43 of the district court. On February 20, 2018, the district court granted our motion for reconsideration and our motion that it be deemed unopposed. It was on March 7, 2018, when APELIN filed for the first time a motion for reconsideration of that order, starting to raise those arguments. Thus, the district court denied that motion for reconsideration, entered summary judgment. The APELIN submitted another motion for reconsideration, so they filed two motions for reconsideration, which were denied. None of those rulings state that there was excusable neglect by APELIN when they failed to oppose our motion for reconsideration. So we submit on the procedural argument that APELIN should not be able to use this appeal to cure their deficiencies on the district court below. Now on the merits, you were going to ask something, Judge Lynch? Yes, to ask you to address the merits. Yes. On the merits, we believe that the arguments fair no better. APELIN basically makes two arguments, but before making those arguments, it is important to note that they do not challenge breaching their contractual obligations, breaching the payment obligations, or pretty much owing the amount of the debt. They make two basic arguments. First one, the first argument is that Puerto Rico Farm Credit was forced or mandated by to put forward our own alternative restructuring plan once it denied the proposed plan by the appellants. There is no such mandate in the statute. The statute says that other than evaluating the proposed plan under the relevant and applicable criteria, the statute does not require Puerto Rico Farm to offer its own plan to restructure the loan. So, that should clear that first part. Now, appellants argue, other argument is that in denying the proposed plan to restructure and then move to foreclosure, Puerto Rico Farm did not comply with the requirements of the Farm Credit Act. As Judge Lynch, the questions you posed to the appellants, it clearly shows that the credit needed to evaluate in deciding whether to restructure the loan or move to foreclosure. What the district court did rule, and the record shows below as uncontested, is that Puerto Rico Farm complied with all the requirements of the law and the regulation because it sent a distress loan notification advising the appellants that their loan was in default. It also advised them of their rights to seek a possible restructuring of the loan. The record also shows below, as uncontested, that once appellants submitted their proposed restructuring plan, Puerto Rico Farm evaluated the same complaint with all applicable statutes and regulations and denied the proposal because at the end of the day, there was no viable plan, restructuring plan proposed by plaintiff. As Judge Lynch touched upon, there was really no income to cover for the repayment of the debt. The record shows below at document 41-4, which is the analysis of the Puerto Rico Farm credit made, is that even the income submitted by the appellants did not necessarily even cover their own living expenses, much less use the excess amount of unsupported income to cover any such debt. But appellants concentrate their argument in only one of the criterias, which is the least cost analysis on deciding whether to deny the restructuring of the loan or pursue foreclosure. But again, I want to touch upon some of the criterias that Puerto Rico Farm did evaluate in making its decision. First, Puerto Rico Farm had to determine whether there was a reasonable probability that orally debt repayment would occur as a result of the proposed restructuring. The answer was no. In fact, there was no viable plan proposed by the appellants, much less one that will allow the repayment of this debt. Another criteria that Puerto Rico Farm evaluated was whether the borrower furnished or was As Judge Lynch pointed out, the uncontested evidence below shows that appellant did not submit complete or accurate financial data or statements because it had no supporting documentation regarding the alleged rental income, the consulting service fees, or contracts, consulting is contracts, or even the alleged tax credits it was claiming that will allow them to repay the debt. Another criteria used by Puerto Rico Farm was whether the borrower was applying all income over and above the necessary reasonable living expenses to the payment of the debt or the obligations. Again, the uncontested evidence shows that Puerto Rico Farm did not receive payment for over 11 years now and that appellants did not generate the sufficient income to even cover their living expenses and credit card debt. Finally, one of the other criterias of the regulations is whether the borrower had the financial capacity to repay the debt or was also working out existing financial difficulties. The answer to that was no. Thus, it is our position as we state in the brief and state in the district court below that the appellants did not meet any of the criteria under the statute of the regulations to be able to restructure this loan. That is why our first argument is that the analysis to restructure the loan or to foreclose the alternative of the least cost of the alternative was inapplicable or an opposite for this case. As the record shows or as this regulation shows, that least cost analysis should be done based on the proposed as proposed in the application for restructuring, but having no viable plan to be able to restructure, then you cannot perform that least cost analysis. But even then, Puerto Rico Farm submitted evidence that it did perform that least cost analysis and that is in the same motion for reconsideration. And that least cost analysis based on assumptions because, again, the financial data was not provided, it ended up with the least cost analysis ended up that foreclosure was the way to go. They contend in the least cost analysis, you admitted you should have added in $143,000. I think the number was previously includes incurred costs, which they say are foreclosure costs. What is your response to that? Well, I think it is the same response to what you were saying, Judge Cayetana, that the way the statute reads, it is the forward-looking expenses that will be incurred. If you would use those numbers, you would add it up to the investment of the loan on those tables, and you would add it to both tables, the foreclosure one and the restructuring one. Is there anything in the record that tells us what the $143,000 was? Suppose you started one foreclosure proceeding it requires five steps. You did three of the steps and then aborted it, and those three steps cost you $10,000. And then you did a second proceeding, and in that second proceeding, you just estimated steps four and five because you had already done the first three. That would seem to circumvent the statute. I cannot tell if that was done here from the record because I do not know what the $143,000 was. Well, as part of our motion for summary judgment, we submitted a certification of the debt, which detailed the different classifications of the amount of the debt that we claim in the summary judgment. I take it there is nothing in the record that tells me what the $143,000 is? The $143,000 number is the one that the appellants are raising. The amounts that we claimed are detailed at docket 19-2. That's time. So, in the end, to finish my thought and conclude, Judge Lynch, if you allow it. Yes. All this evidence that Puerto Rico Farm submitted to the district court remained unopposed before the order granting our motion for reconsideration and eventual summary judgment. Therefore, none of the arguments raised by appellants here should prosper, and obviously, the summary judgment of the district court should be confirmed. Okay. Thank you. Thank you. Judge Lynch, may I be allowed 30 seconds? Yes. In order to address the questions posed by Judge Cayatta, the $143,000 are explained in the verified complaint, paragraph 20, appendix 20. The $143,334.97 is the addition of $118,334.97 and $25,000 that are previously itemized in the certification of debt included as of February 9, 2016 with the verified complaint. This would be exhibit K of the verified complaint, which is appendix X150-150. And they are explained as $118,000 in attorney's fees and $25,000 in legal expenses. If you add those, they add the $143,000 that are referenced in the paragraph 20 of the complaint, plus in that one, they do request also the $29,200 in attorney's fees, which is the 10% of the promissory note. Okay. Thank you. That concludes argument in this case. Attorney Lopez-Ortiz and Attorney Munez-Luciano should disconnect from the hearing at this time.